UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

DENISE HASKINS

    Plaintiff

VS.

BIO BLOOD COMPONENTS
    A Michigan Corporation

    Defendant.

Case No.
HON.

**COMPLAINT FOR DAMAGES, INJUNCTION, AND DECLARATORY RELIEF**

Dave Peters (P48648)
Attorneys for Plaintiffs
Pacific Justice Institute
PO Box 51787
Livonia, Michigan 48151-1787
Email: dpeters@pji.org
Phone: (734) 732-4050/ (916) 857-6900

**COMPLAINT FOR DAMAGES, INJUNCTION, AND DECLARATORY RELIEF**

Now comes the Plaintiff, DENISE HASKINS, by Counsel, PACIFIC JUSTICE INSTITUTE, INC., who Complains about the Defendant BIO BLOOD COMPONENTS upon information and belief, as follows:

**NATURE OF THE CASE:**

1. This is an action seeking damages and other relief stemming from employment discrimination in violation of Title VII of the Civil Rights of 1964, as codified by 42 U.S.C. 2000e to 2000e 17, *as amended*, ("Title VII") and the Elliot Larsen Civil Rights Act of Michigan P.A. 453 (1976).

2. Plaintiff is an elderly woman of 65 years of age who was employed by the Defendant as a medical office assistant.

3. While in the employ of the Defendant, BIO BLOOD COMPONENTS (hereinafter "Defendant" or "Employer") the Plaintiff, DENISE HASKINS (hereinafter "Plaintiff") was discriminated against on account of her practice of religion and suffered injuries and damages as a result of her unlawful employment termination initiated by the Defendant.

4. The unlawful employment discrimination was based on the exercise of Plaintiff's religion.

5. The Employer did not provide any opportunity to reasonably accommodate the Plaintiff's religious beliefs when doing so would not have imposed an undue hardship on the employer.

6. Plaintiff seeks damages for deprivation of her Constitutional Rights in the form of a wrongful discharge from her employment with the Defendant and for retaliation in

2

requesting reasonable accommodations to avoid having to violate her sincerely held religious beliefs.

## PARTIES

7. Plaintiff, DENISE HASKINS, is a 65-year-old female who currently resides in Muskegon, Michigan and has so resided continuously for at least the preceding 6 months.

8. Defendant, BIO BLOOD COMONENTS is, upon information and belief, a Michigan Corporation registered in the State of Michigan with a corporate headquarters located at: 2585 BARCLAY ST, MUSKEGON, MI 49441.

9. Plaintiff was employed by the Defendant from 2019 through February 13, 2021 working as a medical office assistant screening individuals seeking to donate plasma.

## JURISDICTION AND VENUE:

10. This Court has jurisdiction pursuant to 28 U.S.C. Section 133 and 42 USCA 1983 as this case involves questions of federal law and Pendant Jurisdiction over State Civil Rights laws in Michigan pursuant to 28 USC 1367.

11. The Plaintiff also seeks declaratory relief as authorized by 28 U.S.C. Sections 2201 and 2202.

12. Venue is proper in this court as both parties reside in the City of Muskegon, State of Michigan, within the Jurisdiction and Venue of the federal district court for the Western District of Michigan.

## PROCEDURAL REQUIREMENT(S) AND EXHAUSTION OF ADMINISTRATIVE REMEDY(IES)

13. Plaintiff timely filed charges of discrimination with the United States Equal Employment Opportunity Commission ("the EEOC") that she digitally signed on or about June 23, 2021 and, on information and belief filed this contemporaneously with the EEOC.

14. The EEOC investigated the charge and issued a Right to Sue letter on March 31, 2022.

15. Plaintiff has timely filed this instant action and complied with all administrative and procedural requirements necessary to file this lawsuit.

16. As far as Plaintiffs can tell, on information and belief, this matter in dispute is a case of first impression in the Western District of Michigan involving the compelled use of preferred gender pronouns by an employer with respect to other employees even where there are sincerely held and legitimate religious objections to this compulsion.

## RELEVANT BACKGROUND INFORMATION:

*Plaintiff's Work History with the Defendant*:

17. Plaintiff, was employed by the Defendant from October 2019 to February 13, 2021.

18. Plaintiff's job duties included screening patients seeking to donate their plasma.

19. Part of Plaintiff's job duties had her routinely interact with another staff person who Plaintiff knew for nearly two years as a woman.

20. One day in early February, 2021 the female staff worker appeared at work and announced that she was now a man and demanded to be exclusively referred to by her- his- new pronouns.

21. Plaintiff is a believing Christian who would not wish to make anyone feel uncomfortable but as a follower of the light and truth that is Jesus Christ, she sincerely believes that she cannot live a lie and remain within the truth.

22. Plaintiff sincerely believes that living a lie and being forced to repeat that lie out loud with her own lips is a significant violation of her right to practice her religion.

23. There is ample Holy Scripture that supports the Plaintiff's contention to hold this belief with great sincerity (c.f. *Mathew 15:11* "A person is not defiled by what goes into his mouth but what comes out of it"; *Ephesians 4:5*: "Speak the truth to your neighbor"; *2 Timothy 10*: "Present yourself to God as one approved, a worker who does not need to be ashamed and who correctly handles the word of truth"; *John 8:32:* "The truth shall set you free"; *Proverbs 12:22* "The Lord detests lying lips"; *Exodus 20*: "Thou Shalt Not Lie"; *John 8:44*: You belong to your father, the devil, and you want to carry out your father's desires. He was a murderer from the beginning, not holding to the truth, for there is no truth in him. When he lies, he speaks his native language, for he is a liar and the father of lies"; *Col 3:9*: "Do not lie to each other"; *Psalm 34:12–13***:** **"**Does anyone want to live a life that is long and prosperous? Then keep your tongue from speaking evil and your lips from telling lies"; *Proverbs 19:9*: **"**A false witness will not go unpunished, and a liar will be destroyed. "

24. On February 13, 2022, just after the Plaintiff clocked in, her boss "Kristina" informed Plaintiff there had been a Complaint from "Ryan Stone" the person identified as the Transgender woman.

25. The nature of the Complaint was not identified but "Kristen" acting as an agent for the Defendant, advised Plaintiff in a back-and-forth conversation that "Ryan" had the right to

5

not be bullied or harassed while the Plaintiff advised her boss that Plaintiff had the right of free speech and could not have her speech compelled to tell a lie because she was a believing Christian who will not live a lie.

26. Plaintiff immediately requested a religious accommodation to the fellow employees demands and her request was denied without hearing and without any consideration or interactive process.

27. Kristen, the supervisor, demanded that Plaintiff write a letter of resignation which the Plaintiff declined to do.

28. At no point did Plaintiff bully or harass her fellow employee.

29. Following the refusal to resign, Plaintiff was fired.

30. Title VII requires an interactive process to determine if reasonable accommodations for the Plaintiff's religious objections could be made without imposing undue hardship on the employer but no such process was ever conducted and no due process of any kind was ever granted to the Plaintiff regarding her sincerely held religious objections.

32. Plaintiff knows and agrees and stipulates that prolonged and deliberate misuse of a person's preferred gender pronouns with malicious intent (i.e. malicious misgendering) can result in cruelty, intimidation, harassment, or bullying, and this can in turn result in a hostile work environment that is prohibited and actionable by employers.

33. There is no allegation of the Plaintiff behaving with cruelty, or intimidating, harassing, or bullying her fellow employee in any way whatsoever and her intent is not and could not be "malicious."

34. Rather, it was the Plaintiff who was intimidated, bullied, harassed, and ultimately terminated from her job for refusing to violate her sincerely held religious beliefs.

35. There were any number of Reasonable Accommodations Defendant could have offered from transferring locations, or moving either the Plaintiff or the aggrieved employee, or simply telling the aggrieved employee the truth, that she- he- has no right to force another person to verbally adopt and accept her- his- beliefs and that he- she- cannot change the work of the Lord merely to suit a personal whim or accommodate a mental illness or belief system.

36. Plaintiff agrees the aggrieved employee has the right to speak, act and dress as she- he- chooses without malicious misgendering, bullying, or harassment, but the Plaintiff also has that right.

37. Failing to address a person by their new favored pronouns is not a right in the Constitution such as the freedom of religious practice and even if such rights are created from whole cloth by practice, common law, or even statute, these new rights cannot possibly supersede enumerated Constitutional Rights like the Free Exercise Clause.

## CAUSES OF ACTION:
## 1.  TITLE VII:  RELIGIOUS DISCRIMINATION

38. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint.

39. Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et. seq states:

> (b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, any agent of such a person…;

> (f) The term "employee" means an individual employed by an employer…
>
> (j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

40. 42 U.S.C. Section 2000e-2 entitled **UNLAWFUL EMPLOYMENT PRACTICES** provides, in relevant part, as follows:

> (a) Employer practices
>
>> **It shall be an unlawful employment practice for an employer** –
>> (1) to fail or refuse to hire or to **discharge any individual**, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…**religion.**
>
> (m) **Impermissible consideration** of race, color, **religion**, sex, or national origin in employment practices

41. A religious discrimination claim under Title VII requires that (1) the Plaintiff has a bona fide religious belief that conflicts with an employment requirement; (2) the Plaintiff informed the employer of this belief; and (3) the Plaintiff was disciplined or threatened with discipline for failure to comply with the conflicting employment requirement. *Durant v. Nynex*, 101 F. Supp. 2d 227 (S.D.N.Y. 2000); *Siddini v. New York City Health & Hospital*, 572 F. Supp. 2d 353 (S.D.N.Y. 2008); *Domenech*, 2016 U.S. Dist. LEXIS 61175.

42. Plaintiff has a bona find religious belief, she informed the employer of her belief, and she was disciplined and terminated as a result of her failure to comply with the violation of her religious beliefs.

43. Defendant, upon information and belief, has employed more than fifteen (15) employees for all relevant periods and is a covered employer subject to Title VII.

44. Plaintiff, was a covered employee of the Defendant for all relevant periods herewith.

45. Plaintiff is a professing Christian who believes the plain meaning and repeated commands found in Holy Scripture regarding truth, living in the truth, and God's will.

46. Every major religion specifically addresses and rejects alternative lifestyles, including the lifestyle choice they are attempting to force Plaintiff to endorse with her own words.

47. Plaintiff immediately asked for an accommodation and immediately made it known that her religious beliefs would not permit her to live a lie.

48. Rather than offering any kind of accommodation, or any type of due process, or any hearing, or any consideration of the Plaintiff's religious beliefs whatsoever, Defendant, by their agent, terminated the employment of Plaintiff.

49. Plaintiff had the right under Title VII to have her sincerely held religious beliefs accommodated absent a showing of a substantial burden to the employer.

50. The employer/Defendant did not, and on information and belief they cannot, show that accommodating the Plaintiff was a substantial burden.

51. Plaintiff was terminated after requesting a religious accommodation.

52. There is no good faith justification in the actions of the Defendant, through its agents, servants, and employees, in subjecting the Plaintiff to retaliation for opposing religious discrimination in the workplace, and said actions of the Defendant are a violation of Title VII.

53. The actions of the Defendant constitute unlawful employment practices which are retaliatory in nature and in violation of Title VII.

54. As a direct result of the actions of the Defendant's unlawful employment practices in violation of Title VII, the Plaintiff has suffered and will continue to suffer harm,

including, the violation of her rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, and special damages.

55. Plaintiff is entitled to the maximum damages allowable under Title VII as a matter of law, including, but not limited to: actual, consequential and incidental financial losses; lost wages, backpay, front pay, benefits, and other compensation plus interest; compensatory damages; punitive damages; nominal damages; restoration of vacation days, comp hours and any lost time hours; reasonable attorneys' fees and costs of suit.

56. Plaintiff also seeks a declaration that absent a showing of repeated "Malicious Misgendering" with intent to cause emotional or psychological harm which amounts to bullying, cruelty, or creates a hostile work environment as measured by an objectively reasonable person, and which in fact does cause harm, then the fundamental Constitutional Right of Free Speech enumerated in the First Amendment, including the Free Speech and the Free Exercise clauses convey superior rights over any claimed right to preemptively force individuals to constrain or violate their own rights of free speech.

57. In particular, Plaintiff seeks a declaration that forcing any person to repeat words they believe are untruthful, or which violate their sincerely held religious beliefs, constitutes an impermissible prior restraint on Free Speech that cannot justify an employment termination unless the employer can show that accommodating the person's Constitutional Rights imposes an undue burden.

## COUNT II:

## THE ELLIOT LARSEN CIVIL RIGHTS ACT OF MICHIGAN PROHIBITS EMPLOYMENT DISCRIMINATION BASED ON A VIOLATION OF CONSTITUTIONAL RIGHTS

58. This court has Supplemental Jurisdiction over State claims arising from the same case or controversy pursuant to 28 USC 1367.

59. There is a common nucleus of operative facts between Plaintiff's Federal Civil Rights clams under Title VII and the State claims under the Elliot Larsen Civil Rights Act such that a Plaintiff would ordinarily expect to try the common issues together [Finley v. United States, 490 U.S. 545, 548-549 (U.S. 1989)].

60. The Michigan Elliot Larsen Civil Rights Act provides at section 37.2102:

> 37.2102 Recognition and declaration of civil right; action arising out of discrimination based on sex or familial status. Sec. 102. (1) **The opportunity to obtain employment**, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities **without discrimination because of religion,** race, color, national origin, age, sex, height, weight, familial status, or marital status as prohibited by this act, **is recognized and declared to be a civil right.**

61. Elliot Larsen plainly states in the very first paragraph of the law: "The opportunity to obtain employment…..without discrimination because of religion….is recognized and declared to be a civil right" (MSA 37.2102).

62. The law goes on to prohibit an employer from failing or refusing to "hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion" (MSA 37.202).

11

63. The Michigan Constitution recognizes religious liberty and prohibits undue interference with the exercise of religion which the Defendant violated.

64. The Constitution of the State of Michigan is similar to the federal Constitution and our courts have long recognized that it provides at least as much protection.[1]

65. The Michigan Constitution states at § 4:

> *Freedom of worship and religious belief; appropriations. Sec. 4. Every person shall be at liberty to worship God according to the dictates of his own conscience. No person shall be compelled to attend, or, against his consent, to contribute to the erection or support of any place of religious worship, or to pay tithes, taxes or other rates for the support of any minister of the gospel or teacher of religion. No money shall be appropriated or drawn from the treasury for the benefit of any religious sect or society, theological or religious seminary; nor shall property belonging to the state be appropriated for any such purpose.* ***The civil and political rights, privileges and capacities of no person shall be diminished or enlarged on account of his religious belief***

66. The Michigan Constitution provides MORE protection than the federal Constitution in that it prohibits the diminishment of civil and political rights and privileges "on account of his religious belief.

67, The Federal Constitution merely protects against infringements on the practice of religion while the Michigan Constitution prohibits the diminishment of civil and pollical rights on account of religious beliefs and this would include the fundamental rights to free speech and freedom to practice religion.

68. Defendant diminished the civil and political rights and privileges of the Plaintiffs "on account of their religious beliefs" in violation of the Michigan Constitution when they

---

[1] <u>Winkler v. Marist Fathers of Detroit, Inc.</u>, 500 Mich. 327, 901 N.W.2d 566, 2017 Mich. LEXIS 1204.

12

  attempted to coerce her into repeating statements she did not believe were true and that violated her Religious beliefs.

69. As a direct and proximate result of the Defendant's unlawful conduct described above and the violation of Plaintiffs' constitutional rights, Plaintiffs have suffered severe mental anguish and emotional distress, including but not limited to, stress and anxiety, and emotional pain and suffering.

70. Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of Plaintiffs' constitutional right to religious freedom and as such, their actions are outrageous and malicious, were intended to injure Plaintiffs, and were done with reckless indifference to Plaintiffs' constitutional rights, entitling Plaintiffs to an award of punitive damages.

## **PRAYER FOR RELIEF:**

WHEREFORE, the Plaintiff respectfully prays this Court grant relief as follows:

A. Award the Plaintiff for actual, consequential and incidental financial losses, including, but not limited to loss backpay, front pay, benefits, and other compensation plus interest;

B. Award the Plaintiff compensatory damages;

C. Award the Plaintiff punitive damages;

D. Award the Plaintiff nominal damages;

E. Restore any vacation days, comp hours, and lost time hours used by the Plaintiff;

F. A declaration that "misgendering" a person without Malicious Intent and which does not cause actual harm does not create a Hostile Work Environment'

G. A declaration that the First Amendment Free Speech Clause protects the non-malicious "misgendering" of another person.

H. A declaration that the First Amendment Free Exercise Clause protects speech, including the non-malicious "misgendering" of another person.

I. A declaration that no individual can force another individual to prospectively police their language or to force persons to articulate and repeat what they believe to be a lie or that contradicts their personal and sincerely held religious beliefs.

J. A declaration that any speech by any individual who "misgenders" another person as a consequence of that persons sincerely held religious beliefs, is protected under the First Amendment Free Exercise Clause.

K. A declaration that any individual who "misgenders" a person, absent malice, primarily because of their sincerely held religious beliefs, is protected under the First Amendment Free Exercise Clause.

L. A declaration that Title VII requires the employer to reasonably accommodate a person's right of Free Speech and their right to Exercise their religion or to show that failing to accommodate imposes an undue hardship on the employer that cannot be reasonably accommodated.

M. Award to the Plaintiff reasonable attorneys' fees and costs of suit; and

N. Grant the Plaintiff additional or alternative relief as the Court deems just and proper.

Dated this 27th day of June, 2022

Respectfully Submitted,

PACIFIC JUSTICE INSTITUTE

By: *s/ Dave Peters*
David C. Peters II, JD, MS, PhD, Esq.
Licensed in Michigan (P48648)
Pacific Justice Institute Metro Detroit Office
Attorneys for Plaintiffs
PO Box 51787
Livonia, Michigan 48151-1787
Email: dpeters@pji.org
Phone:        (734) 732-4050
Main Number: (916) 857-6900